# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

L.B., *by her next friends and parents*, SAMANTHA BROWN and HENRY BROWN,

　　　　Plaintiffs,

　　　　v.

HARRISON COUNTY SCHOOL DISTRICT; HARRISON COUNTY SCHOOL BOARD; MITCHELL KING, *the Superintendent of Harrison County School District*; KELLY FULLER, *the Principal of Harrison Central High School,*

　　　　Defendants.

Civil Action No. 1:23cv124 HSO-BWR

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... IV

INTRODUCTION ...................................................................................... 2

NATURE AND STATUS OF THE PROCEEDINGS ....................................... 3

SUMMARY OF ISSUES ............................................................................. 3

SUMMARY OF ARGUMENT ..................................................................... 4

BACKGROUND ....................................................................................... 7

    I.    PLAINTIFF L.B.'S ABILITY TO WEAR A DRESS AND DRESS SHOES AT GRADUATION IS CRITICALLY IMPORTANT TO HER ............................................................... 7

    II.    PLAINTIFF L.B. HAS WORN DRESSES AND OTHER TRADITIONALLY FEMININE CLOTHING IN THE SCHOOL DISTRICT WITHOUT ANY ISSUES ........................................... 8

    III.    DEFENDANTS HAVE UNJUSTLY BARRED L.B. FROM WEARING A DRESS AND HEELED SHOES AT HER GRADUATION BECAUSE OF HER GENDER ................................ 9

    IV.    PLAINTIFF L.B. HAS SUFFERED AND WILL SUFFER IRREPARABLE HARM BECAUSE OF DEFENDANTS' DECISION TO PROHIBIT HER FROM PARTICIPATING IN GRADUATION CONSISTENT WITH THE GENDER SHE LIVES EVERY DAY ........................................ 11

**ARGUMENT ...................................................................................... 12**

    I.    PLAINTIFF L.B. HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON HER CLAIMS 12

        1.    *Defendants' Prohibition Against L.B.'s Participation in Graduation While Wearing a Dress Violates the Equal Protection Clause* ...................................... 12

        2.    *Defendants' Prohibition on L.B.'s Ability to Wear a Dress and Heeled Shoes at Graduation Violates Title IX* ............................................................. 16

3.   *Harrison County School District's Gendered Dress Code Policy Violates the First Amendment* ................................................................................................ *19*

II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION  21

III.   THE BALANCE OF EQUITIES TIPS SHARPLY IN PLAINTIFFS' FAVOR .................... 22

IV.   INJUNCTIVE RELIEF IS NECESSARY TO SERVE THE PUBLIC INTEREST ................. 23

V.   THE COURT SHOULD NOT REQUIRE PLAINTIFFS TO PROVIDE SECURITY PRIOR TO ISSUING A TEMPORARY RESTRAINING ORDER. ........................................................ 24

**CONCLUSION** ................................................................................................ **24**

**CERTIFICATE OF CONFERENCE** ....................................................... **26**

**CERTIFICATE OF SERVICE** ................................................................ **27**

# TABLE OF AUTHORITIES

## CASES

*Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 521 (S.D. Tex. 2020)................. 13

*A.C. v. Magnolia Indep. Sch. Dist.*, No. 4:21-cv-03466, Dkt. 20 (S.D. Tex. Oct. 26, 2021) ....... 13

*A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 221-22 (5th Cir. 2009)........................................ 19

*ACLU v. Reno*, 929 F. Supp. 824, 851 (E.D. Pa. 1996)................................................................ 22

*Ayton v. Holder*, 686 F.3d 331, 338 (5th Cir. 2012) .................................................................... 12

*Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 441 (5th Cir. 2001). ................................ 18, 19

*Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300 (5th Cir. 1978)............................ 23

*Craig v. Boren*, 429 U.S. 190 (1976)........................................................................................... 12

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ................... 20

*Doe ex rel. Doe v. Vermilion Par. Sch. Bd.*, 421 F. App'x 366, 372 (5th Cir. 2011). ................. 12

*E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 456–60 (5th Cir. 2013) (en banc)................. 17

*Elrod v. Burns*, 427 U.S. 347, 373, (1976) .................................................................................. 20

*Entertainment Software Ass'n v. Foti*, 451 F. Supp. 2d 823, 837 (M.D. La. 2006) .................... 22

*Freelance Entertainment, LLC v. Sanders*, 280 F. Supp. 2d 533, 547 (N.D. Miss. 2003) .......... 21

*Frontiero v. Richardson*, 411 U.S. 677, 683 (1973) .................................................................... 12

*Hayden ex rel. A.H. v. Greensburg Community School Corporation*, 743 F.3d 569, 583 (7th Cir. 2014)........................................................................................................................................... 17

*Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996)................................... 20

*Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999)......................... 22

*J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 136 (1994) .................................................... 12, 14

*Karr v. Schmidt*, 460 F.2d 609, 618 (5th Cir. 1972)..................................................................... 12

iv

*Kite v. Marshall*, 454 F. Supp. 1347, 1351 (S.D. Tex. 1978). ....................................................... 22

*McIntire v. Bethel School Indep. School Dist*. No. 3, 804 F. Supp. 1415, 1429 (W.D. Okla. 1992)

.................................................................................................................... 21

*McKee v. City of Rockwall, Tex.*, 877 F.2d 409, 422 (5th Cir. 1989) ........................................... 12

*McMillen v. Itawamba Cnty. Sch. Dist.*, 702 F. Supp. 2d 699, 704-05 (N.D. Miss. 2010). ......... 19

*Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 723 (1982) .............................................. 12

*N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) ............................................................. 16

*Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82 (5th Cir. 1992) ................................................ 22

*Peltier v. Charter Day School, Inc.*, 37 F.4th 104, 130–31 (4th Cir. 2022) (en banc). ............... 17

*Reed v. Reed*, 404 U.S. 71 (1971). ................................................................................................ 12

*Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) ........................................... 12, 13, 14

*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020) ............................................. 17

*Sturgis v. Copiah Cty. Sch. Dist.*, No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355, at *3 (S.D.

Miss. Sept. 15, 2011) ............................................................................................................. 13

*Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) ................................................................... 22

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 515 (1969). ....................... 4, 18, 19

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994) ........................................................ 23

*United States v. Price*, 383 U.S. 787, 801 (1966) ........................................................................ 16

*United States v. Virginia*, 518 U.S. 515, 533 (1996). ............................................................ passim

*Wengler v. Druggists Mutual Ins. Co.*, 446 U.S. 142, 150 (1980) ............................................... 14

### STATUTES

20 U.S.C. § 1681(a). ........................................................................................................ 4, 15, 17

20 U.S.C. § 1686 ........................................................................................................................... 17

34 C.F.R. § 106.31(b)(4)..................................................................................... 15

34 C.F.R. § 106.31(b)(7)..................................................................................... 16

7 C.F.R. § 15a.31(b)(4),..................................................................................... 15

Fed. R. Civ. P. 65 ............................................................................................... 2

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. XIV ............................................................................... passim

U.S. Const., amend. I. .................................................................................. passim

# INTRODUCTION

Plaintiff L.B. is a 17-year-old girl and current senior who will graduate on Saturday, May 20, 2023, from Harrison Central High School. L.B. is just like every other high school senior—a teenager excited to commemorate the last four years of her high school career, to walk across the stage and accept her long-awaited diploma as her peers and teachers cheer her on, and to go home to celebrate this momentous occasion with her parents, friends, and family members. And just like her peers, L.B. is entitled to participate fully in her high school graduation without being subjected to discriminatory and unjust treatment solely based on her gender.

However, less than two weeks before her graduation, Defendants informed Plaintiff L.B. and her parents for the first time that she would not be permitted to wear a dress at her graduation because she was required to dress according to her male sex assigned at birth—even though L.B. entered Harrison Central High School as a girl and has lived every aspect of her four-year high school career as a girl. In doing so, Defendant King referred to her as a "boy," and simply pointed to the District's policy as justification for Defendants' discrimination. Since she began attending Harrison Central High School as a freshman four years ago, L.B. has worn dresses, skirts, high-heeled shoes, and other traditionally feminine clothing items to school and school-sponsored events and activities without issue. Despite this, on the eve of a capstone event and following four years of her enrollment in the School District, Defendants have threatened to exclude L.B. from participating in her long-awaited high school graduation solely because of her gender.

Defendants' sudden decision to prohibit L.B. from participating in graduation in a manner consistent with the gender she lives every day violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, Title IX of the Education Amendments of 1972, and the First Amendment right to freedom of expression. By prohibiting L.B. from attending

graduation in a dress, Defendants are actively and presently inflicting significant harm on L.B., including by effectively forcing L.B. to miss her own high school graduation. This Court has the authority to stop this ongoing and unconstitutional deprivation of L.B.'s rights. Accordingly, Plaintiffs seek emergency relief to stop Defendants from continuing to harm L.B. by barring her from participating in her graduation consistent with the gender she lives every day.

## NATURE AND STATUS OF THE PROCEEDINGS

This action is brought by a student against Defendants Harrison County School District ("School District"), Harrison County School Board ("School Board"), Superintendent Mitchell King, and Principal Kelly Fuller, by and through their next friends and parents, Samantha Brown and Henry Brown. This motion requests emergency relief to temporarily restrain Defendants from prohibiting Plaintiff L.B. from wearing a dress and high-heeled shoes at her graduation, in a manner consistent with her gender. Such relief is necessary to prevent further irreparable harm to Plaintiff L.B. in the absence of injunctive relief.

## SUMMARY OF ISSUES

This motion seeks a temporary restraining order under Federal Rule of Civil Procedure 65(a) and (b). The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until the Court can hold an adversarial hearing for a preliminary injunction. Fed. R. Civ. P. 65(b)(3). Plaintiffs seek emergency relief to allow L.B. to receive equal access to educational programs and activities while this case is pending and prior to the Court's setting of a hearing for preliminary injunction. Plaintiffs notified counsel for Defendants of this lawsuit on May 16, 2023, and of their intent to file this motion for emergency relief on May 17, 2023, and counsel for Defendants represented that Defendants would not lift their gender-based restrictions on L.B.'s participation at graduation.

## SUMMARY OF ARGUMENT

No student should be forced to miss their high school graduation ceremony based solely on that student's gender. Yet, that is precisely what is happening here: After she spent her entire high school career as a girl, including by wearing dresses to school and school-sponsored events, Defendants have instructed L.B. on the eve of her graduation that she cannot attend the ceremony wearing a dress, as she has done without incident for the past four years. L.B. will only graduate from high school once. Plaintiffs require the urgent assistance of this Court to preserve the status quo and allow L.B. to participate equally in her graduation ceremony consistent with the gender that she has lived every day of high school.

Every element required for emergency injunctive relief weighs strongly in Plaintiffs' favor. *First*, Plaintiffs are likely to succeed on the merits of their claims. The legal issues are straightforward. Defendants are violating the Equal Protection Clause by barring L.B. from wearing a dress to her graduation ceremony solely based on her gender. The School District's policy requires "[g]irls must wear a white dress and white dress shoes (no tennis shoes)," while "[b]oys must wear a white button-down shirt, black dress pants, black dress shoes (no tennis shoes) and a tie or bowtie." *See* HCSD Letter to Parents and Graduates, attached hereto as Exhibit C. Defendant Fuller questioned L.B. about what she planned to wear to graduation because she is transgender, and informed her that she would be forced to conform to the dress standards based on the sex that she was assigned at birth. *See* Declaration of L.B. ("L.B. Decl.") ¶ 7. Defendants' gender-based restriction on L.B.'s ability to wear a dress at her graduation ceremony triggers heightened scrutiny under the Equal Protection Clause, and can only be maintained if the School District establishes an "exceedingly persuasive justification" for treating students adversely based on their gender. *United States v. Virginia*, 518 U.S. 515, 533 (1996).

Defendants do not meet this standard. There is no exceedingly persuasive justification for barring L.B. from wearing a white formal dress similar to that worn by other girls at the school's graduation ceremony. Over the past four years of her high school career, Plaintiff L.B. has worn dresses, skirts, high-heeled shoes, and other traditionally feminine clothing items to school and school-sponsored events, without any issues or disciplinary consequences. *See* L.B. Decl. ¶ 4. Moreover, other girls will be permitted to wear dresses during the same graduation ceremony— there is nothing objectionable about the clothing itself. Moreover, students' attire is largely hidden from view beneath graduation gowns during the ceremony itself, further lessening Defendants' interest in what students wear beneath their gowns. Nonetheless, graduation attire remains incredibly important to students themselves, with many (including L.B.) carefully selecting their attire months in advance that will appear in photographs with family and friends on their big day.

Defendants' last-minute attempt to bar L.B. from wearing a dress also violates Title IX, which states that no person in the United States shall "on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). There is no exception from Title IX for school dress codes. The School District is engaging in explicit gender discrimination against L.B. in a manner that violates Title IX.

Defendants' prohibition on L.B.'s ability to wear the attire of her choice is a blatant violation of her First Amendment right to freedom of expression. It is well established that school officials may not ban this kind of expressive conduct unless it would "materially and substantially disrupt the work and discipline of the school." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 515 (1969). That is simply not the case here, where L.B. seeks to do no more than

peacefully express her identity and who she is. Plaintiff L.B. is therefore likely to succeed on the merits of her Equal Protection, Title IX, and First Amendment claims.

*Second*, irreparable injury to Plaintiff L.B. continues daily, as she rapidly approaches the day of her graduation ceremony. L.B. and her family have repeatedly attempted to persuade Defendants to stop discriminating against L.B. based on gender, but Defendants have refused to back down. L.B. has suffered humiliation, anxiety, and significant distress as a direct result of being told that she cannot participate in her graduation ceremony consistent with the gender that she lives, and has lived, every day for the past four years. *See* L.B. Decl. ¶ 10.  Moreover, L.B. continues to suffer every day that she does not know whether she will be able to attend her graduation ceremony, a capstone event that she and her parents have looked forward to all year. A temporary restraining order and injunction is critical to preventing these irreversible and severe harms from occurring.

*Third*, the balance of equities tips sharply in Plaintiff's favor. Plaintiff L.B. will suffer tremendous and permanent injury if she is forced to miss her once-in-a-lifetime high school graduation, and opportunity to commemorate and celebrate the past four years of her life alongside her teachers and peers. Conversely, Defendants have already shown that there is no detrimental effect if Plaintiff L.B. is permitted to attend her high school graduation while wearing a dress. For the past four years, L.B. has worn dresses and other traditionally feminine clothing items to school and school-sponsored events, such as prom, without any problem. And many other students in the School District will wear dresses during the same graduation ceremony. An injunction will merely allow L.B. to continue to participate in high school events in the same way that she has for the past four years.

*Fourth*, granting injunctive relief to protect L.B.'s rights certainly serves the public interest. It harms the public interest to permit Defendants to subject L.B. to severe and ongoing gender discrimination in violation of federal law, and injunctive relief is necessary to protect her constitutional and statutory rights. Moreover, protecting freedom of expression resonates strongly in the context of America's public high schools, where stifling a free exchange of ideas or expression goes against the public interest.

Because Plaintiff L.B. has suffered and will continue to suffer egregious harm from Defendants' sudden decision to prohibit her from participating in graduation consistent with the gender that she lives every day—and because Plaintiffs meet every element for injunctive relief—this Court should issue a temporary restraining order to allow L.B. to attend her high school graduation.

## BACKGROUND

### I.    Plaintiff L.B.'s Ability to Wear a Dress and Dress Shoes at Graduation is Critically Important to Her

1.    Plaintiff L.B. is a 17-year-old girl and senior student in the School District who is expected to graduate with her high school diploma on Saturday, May 20, 2023 at 6:30 p.m., with the rest of her class. Like the rest of her peers, L.B. has been excited to commemorate the last four years of high school alongside her teachers and classmates, to walk across the stage in her cap and gown to accept her diploma while her family and friends cheer her on, to say goodbye, potentially forever, to her classmates on the floor of the Mississippi Coast Coliseum, and to go home and celebrate this momentous achievement with her loved ones.

2.    Plaintiff L.B. also is a transgender girl, and has been openly transgender at Harrison Central High School since she first began attending as a freshman four years ago. A person is transgender if they have a gender identity that does not align with their sex assigned at birth. A

7

girl who is transgender has a female gender identity, although she was assigned male at birth. It is critically important for transgender girls, like L.B., to be recognized as a girl and treated the same as other girls by those in her life, her community, and all government agencies and officials, as well as private entities with which she interacts, or else she may experience significant harm.

3.     For several months, L.B. has been excited to pick out a new dress to wear to her graduation ceremony. With the help of her mother, Plaintiff L.B. finally found and purchased a white formal dress and dress shoes in March of 2023. *See* L.B. Decl. ¶ 5.  L.B. feels confident and happy in the dress she picked out, and is excited to be part of the longstanding school tradition of the whole student body dressed in white together.

4.     L.B.'s ability to wear dresses and other traditionally feminine clothing items is deeply personal and critically important to her and her well-being. *See* L.B. Decl. ¶ 4. L.B. seeks to do so at her graduation without being punished or excluded—as she has frequently done in the past at school and other school-sponsored events and activities, and as other girls in the School District are permitted to do today.

## II.     Plaintiff L.B. Has Worn Dresses and Other Traditionally Feminine Clothing in the School District Without Any Issues

5.     Since L.B. began attending Harrison Central High School as a first-year student, she has worn dresses, skirts, and other traditionally feminine clothing items to school and school-sponsored events, without any issues or negative consequences. L.B.'s teachers and administrators have never instructed her that she may not wear these clothing items or otherwise dress and groom in a manner consistent with her gender identity. L.B.'s clothing has never resulted in disruption or commotion at school or school-sponsored events. Rather, this is simply how L.B.'s classmates and teachers know her in her school environment.

6.      Just last year, L.B. attended Harrison Central High School's annual prom dance wearing a formal dress and high-heeled shoes, without any problem.

7.      The ability to live authentically—including the ability to dress in a manner consistent with her gender—is critically important to L.B.'s physical and mental well-being. Doing so allows L.B. to go to school and focus on her academic studies and extracurricular activities, without feeling singled out or excluded by her teachers, school administrators, or peers. Doing so also allows L.B. to attend and participate fully in school events and activities, without questioning whether she belongs or is worthy of the same respect and dignity as her peers.

8.       Being forced to conform to Defendants' rigid and harmful gender norms would significantly impair L.B.'s ability to develop a healthy sense of self and belonging, relationships with her peers and teachers, and the skills necessary to succeed in adult life, and would result in a significant disruption to her school environment. Forcing L.B. to suddenly dress in a manner inconsistent with the gender she lives every day also would actively exclude L.B. from public school events and activities—most importantly, her own high school graduation—and damage L.B.'s self-esteem and sense of belonging at a time when she and her parents should be celebrating an important achievement in her life.

### III.    Defendants Have Unjustly Barred L.B. From Wearing a Dress and Heeled Shoes at Her Graduation Because of Her Gender

9.      On the eve of a capstone event, and following four years of her attendance at Harrison Central High School, Defendants have barred L.B. from participating in her graduation while wearing a dress and high-heeled shoes because of her gender.

10.      Last week—on May 8, 2023, Assistant Principal Christopher Spencer saw L.B. in the main office and conveyed that the principal, Defendant Fuller, would be reaching out to her to

discuss a matter soon, but did not provide further details. L.B. worried that she was in trouble, and Assistant Principal Spencer assured her she was not. *See* L.B. Decl. ¶ 6.

11.     The next day, on May 9, 2023, L.B. arrived at school, eager for the last few days of her senior year of high school. Defendant Fuller saw L.B. in the main office and asked her what she planned to wear to graduation. L.B. replied that she planned to wear a white formal dress. In response, Defendant Fuller said that "the Superintendent called and informed me that the transgender students would have to wear the dress code assigned to them at birth." Defendant Fuller also informed L.B. that the request to meet with L.B. was prompted by Defendant King, who had recently called and asked what the transgender students would wear to graduation. *See* L.B. Decl. ¶ 7.

12.     During this meeting, L.B. felt extremely upset, embarrassed, and distressed about being singled out for her transgender status and being instructed that she must dress in a manner inconsistent with her gender identity at her high school graduation. Following the meeting, L.B. began crying and contacted her mother to share that she no longer wanted to attend her graduation. *See* L.B. Decl. ¶ 7.

13.     On May 10, 2023, L.B.'s mother, Samantha Brown, called Defendant King to request clarification on the School District's dress code policy for graduation. *See* Declaration of Samantha Brown ("Brown Decl.") ¶ 8. During this call, Defendant King said that L.B. "is still a boy" and that "*he* needs to wear pants, socks, and shoes, like a boy." *Id.* Defendant King further stated that this policy "is in the handbook." Ms. Brown asked Defendant King to reconsider, and he refused to do so.

14.     One day later—on May 11, 2023, L.B. picked up her cap and gown, and was provided with a written policy concerning graduation logistics on the principal's letterhead. The

written policy states: "Girls must wear a white dress and white dress shoes (no tennis shoes). Boys must wear a white button-down shirt, black dress pants, black dress shoes (no tennis shoes) and a tie or bowtie." See HCSD Letter to Parents and Graduates, attached hereto as Exhibit C. Notably, this policy does not specify how it applies to students who are transgender.

15.    On May 16, 2023, L.B. and her mother, through legal counsel, sent a written request by e-mail to Defendants, requesting that Defendants allow L.B. to attend her graduation ceremony wearing the formal dress she purchased.

16.    On May 17, 2023, Defendants, through counsel, responded by phone and denied Plaintiffs' request.

**IV.    Plaintiff L.B. Has Suffered and Will Suffer Irreparable Harm Because of Defendants' Decision to Prohibit Her from Participating in Graduation Consistent with the Gender She Lives Every Day**

17.    Due to the discrimination of being singled out for her transgender status and forced to conform to rigid gender norms in order to attend her high school graduation by Defendants, L.B. has experienced humiliation, shame, anxiety, insult, and severe distress. The threat of being forced by Defendants to dress in a manner inconsistent with her gender identity, during her final and most important high school event in front of her peers and family members, has inflicted severe and irreparable harm on L.B. and her parents.

18.    If Defendants continue to bar her from wearing her dress and heeled shoes at graduation, L.B. does not want to walk across the stage during the ceremony, which will break her and her parents' hearts. Because of Defendants' gendered restrictions against her, L.B. will be forced to miss her own high school graduation—a once-in-a-lifetime event that she and her parents will never be able to replace.

## ARGUMENT

L.B. will only graduate from high school once. She requires the urgent assistance of this Court to allow her to attend the ceremony consistent with the gender she has lived every day of her high school career. Although Plaintiff L.B. and her parents have repeatedly and respectfully shared their concerns directly with Defendants in an attempt to resolve this situation, Defendants have flatly rejected these concerns and pleas for compromise, causing Plaintiff L.B. immense and irreparable harm and leaving injunctive relief as the only option to protect Plaintiff's constitutional and federal rights. Plaintiff L.B. has established each of the four requirements for this Court to issue a temporary restraining order.

## I.      Plaintiff L.B. Has a Substantial Likelihood of Success on Her Claims

Defendants' prohibition against L.B. wearing a dress at graduation actively, and daily, harms Plaintiff L.B. by facially discriminating based on gender. As such, Plaintiff L.B. has established a *prima facie* case of gender discrimination under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Title IX of the Education Amendments of 1972. Defendants have not and cannot provide any legitimate justification that would survive scrutiny under the U.S. Constitution and federal law.

### 1.   Defendants' Prohibition Against L.B.'s Participation in Graduation While Wearing a Dress Violates the Equal Protection Clause

#### a.  Defendants' Prohibition Facially Discriminates Based on Gender and Is Subject to Heightened Scrutiny

The Equal Protection Clause protects the right to equal treatment under law regardless of sex. U.S. Const. amend. XIV; *United States v. Virginia*, 518 U.S. 515, 533 (1996). As a result, any government classification based on gender is "subject to review under the heightened scrutiny that

12

now attends '*all* gender-based classifications.'" *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (quoting *J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 136 (1994)) (emphasis added). The Supreme Court has consistently acknowledged that "'our Nation has had a long and unfortunate history of sex discrimination,' . . . a history which warrants the heightened scrutiny we afford all gender-based classifications today." *J.E.B.,* 511 U.S. at 136 (quoting *Frontiero v. Richardson*, 411 U.S. 677, 683 (1973)). Defendants have engaged in a sex-based classification by barring L.B. from wearing a dress to her graduation ceremony based on her sex assigned at birth. As a result, this gender classification is subject to heightened scrutiny under binding precedent.

The Fifth Circuit has repeatedly followed Supreme Court precedent to apply heightened scrutiny to claims of gender discrimination under the Equal Protection Clause. *See, e.g.*, *McKee v. City of Rockwall, Tex.*, 877 F.2d 409, 422 (5th Cir. 1989) ("If an action is gender-based, then it is subject to heightened scrutiny"); *Ayton v. Holder*, 686 F.3d 331, 338 (5th Cir. 2012) (applying heightened scrutiny to a federal immigration statute). In the context of public education, heightened scrutiny still applies to all government-drawn gender classifications. *See, e.g.*, *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 723 (1982); *Virginia*, 518 U.S. at 533; *Doe ex rel. Doe v. Vermilion Par. Sch. Bd.*, 421 F. App'x 366, 372 (5th Cir. 2011).

To the extent that Defendants will seek to rely on it, *Karr v. Schmidt*, 460 F.2d 609, 618 (5th Cir. 1972), approved of a school district's gender-based grooming policy nearly 50 years ago—but this case is contrary to binding Supreme Court precedent and inapposite for several reasons. First, the *Karr* decision failed to address the Supreme Court's decision to apply the Equal Protection Clause for the first time to invalidate a sex classification just a year before in *Reed v. Reed*, 404 U.S. 71 (1971). Additionally, shortly after the decision in *Karr*, the Supreme Court made explicit that heightened scrutiny applies to all government-drawn gender classifications. *See*

13

*Craig v. Boren*, 429 U.S. 190 (1976). Since *Craig* was decided, there has been an unbroken line of Supreme Court precedent establishing that heightened scrutiny now attends "*all* gender-based classifications." *Morales-Santana*, 137 S. Ct. at 1689 (emphasis added).

District courts in this circuit have correctly and repeatedly held that public school students may challenge gender-based dress codes under the Equal Protection Clause notwithstanding the Fifth Circuit's decision in *Karr*. In *Arnold v. Barbers Hill Independent School District*, this Court found that *Karr* does not bar claims of gender discrimination against a school district's hair policy that only applies to boys. 479 F. Supp. 3d 511, 521 (S.D. Tex. 2020) ("*Karr* did not discuss the questions presented by K.B.—let alone resolve them adversely to K.B.—because the *Karr* Court was not presented with those questions."). The Court in *Arnold* further explained that *Karr* predates nearly all Supreme Court precedent that now mandates heightened scrutiny for every government-imposed gender classification. *Id.* ("In any event, [*Karr*] predates the Supreme Court precedent the application of which it purportedly precludes."); *see also Sturgis v. Copiah Cty. Sch. Dist.*, No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355, at *3 (S.D. Miss. Sept. 15, 2011) ("*Karr* does not address alleged sex discrimination. . . . Here, Sturgis squarely raises the sex-discrimination argument *Karr* avoided."); *A.C. v. Magnolia Indep. Sch. Dist.*, No. 4:21-cv-03466, Dkt. 20 (S.D. Tex. Oct. 26, 2021) (granting a temporary restraining order to enjoin a school district's gender-based hair-length rule on the basis that it likely violated the Equal Protection Clause).

### b. Defendants' Decision Barring L.B. From Wearing a Dress and Heeled Shoes at Graduation Fails Heightened Scrutiny

The Supreme Court insists that the burden of justifying gender-based discrimination under the Equal Protection Clause "is demanding and it rests entirely on the State." *Virginia*, 518 U.S. at 531. Defendants must establish that treating students differently based on gender serves "important

14

governmental objectives" and that the means employed for this differential treatment are "substantially related to the achievement of those objectives." *See Hogan,* 458 U.S. at 724 (quoting *Wengler v. Druggists Mutual Ins. Co*., 446 U.S. 142, 150 (1980)). In other words, "gender-based government action must demonstrate an 'exceedingly persuasive justification' for that action." *Virginia*, 518 U.S. at 531 (quoting *J.E.B.,* 511 U.S. at 136). Here, Defendants' gender-based policy entirely fails this standard.

When determining whether a government-drawn gender classification meets heightened scrutiny, "[c]are must be taken in ascertaining whether the statutory objective itself reflects archaic and stereotypic notions." *Hogan,* 458 U.S. at 725. "The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *Virginia*, 518 U.S. at 533; *Morales-Santana*, 137 S. Ct. at 1693 n.13 ("Even if stereotypes frozen into legislation have 'statistical support,' our decisions reject measures that classify unnecessarily and overbroadly by gender when more accurate and impartial lines can be drawn.").

Defendants have not provided any justification for their gender-based restrictions other than Defendant King's flat, incorrect assertion that "it is in the handbook." The mere fact that such restrictions are written down or part of a handbook, however, is irrelevant to any distinctions based on the gender of students. *See Morales-Santana,* 137 S. Ct. at 1690 (requiring specific justification for a "'gender-based' and 'gender-biased' disparity" and not just a policy in general).

There is no justification that supports the need for differential rules based on gender to advance the stated objectives of the School District. Instead, the School District's policy is based purely on gender stereotypes and "overbroad generalizations about the different talents, capacities,

or preferences of males and females." *Virginia*, 518 U.S. at 533. Indeed, the School District has dispensed with this requirement for all other school activities and events: Defendants have permitted L.B. to wear dresses and other traditionally feminine clothing items in prior years, including at the spring prom of 2022, and as recently as L.B.'s last day of school on May 16, 2023. Plaintiff L.B. has worn dresses to school and school-sponsored events and activities for years without any effect on discipline, disruption, safety, or respect for authority. Needless to say, Defendants have not prohibited any other girls from wearing dresses and formal shoes at the upcoming graduation ceremony, and instead have only recently—and suddenly—decided to bar L.B. from wearing a dress and heeled shoes at graduation solely based on gender.

There is simply no justification, let alone an exceedingly persuasive one, for Defendants' suddenly reversing course and barring L.B. from wearing a formal dress to graduation just weeks after she attended prom in a formal gown and years after she began attending school as a girl. Indeed, L.B. has not attended high school any other way. Plaintiffs are substantially likely to prevail on their claims of gender discrimination under the Equal Protection Clause.

## 2. Defendants' Prohibition on L.B.'s Ability to Wear a Dress and Heeled Shoes at Graduation Violates Title IX

Plaintiffs are also substantially likely to prevail on their claims under Title IX, since Defendants' last-minute effort to bar L.B. from wearing a dress based on her sex assigned at birth explicitly discriminates based on sex and has deprived L.B. of equal opportunities in violation of federal law. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In addition to Title IX's clear statutory language, the federal regulations on Title IX also prohibit

16

school districts from subjecting students "to separate or different rules of behavior, sanctions, or other treatment" based on sex, 34 C.F.R. § 106.31(b)(4) and 7 C.F.R. § 15a.31(b)(4), and from "[o]therwise limit[ing] any person in the enjoyment of any right, privilege, advantage, or opportunity" based on sex, 34 C.F.R. § 106.31(b)(7).

The Supreme Court has held that in light of Title IX's remedial purpose to eliminate sex discrimination, courts "must accord [Title IX] a sweep as broad as its language." *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) (quoting *United States v. Price*, 383 U.S. 787, 801 (1966)). And the U.S. Department of Education and U.S. Department of Justice recently explained that where a school district enforces a "sex-based [dress and grooming] policy" against students to deny them "the benefits of their school's education program, and exclude[] them from that program when similarly situated girls would not have been so excluded, Plaintiffs state a sex discrimination claim under Title IX."[1]

Here, Defendants' gender-based restrictions and enforcement against L.B. have violated Title IX by excluding L.B. from her high school graduation ceremony, denying her the same educational access and opportunities afforded to other students, and discriminating against her based on gender. This conclusion comports with the plain meaning of the statute, as well as its purpose to root out stereotypes like those embodied by the gender-specific dress code policy and guarantee all students full and equal opportunity in education regardless of gender. In a similar case, the Seventh Circuit held that a gender-based grooming requirement that applied only to boys in a public education program violated both the Equal Protection Clause and Title IX because it

---

[1]     U.S. Statement of Interest, *Arnold v. Barbers Hill Indep. Sch. Dist.*, No. 4:20-cv-01802 (S.D. Tex. filed July 23, 2021), https://www.justice.gov/crt/case-document/file/1419201/download.

drew a facial classification on the basis of sex and caused students harm without any statutory exception. *Hayden ex rel. A.H. v. Greensburg Community School Corporation*, 743 F.3d 569, 583 (7th Cir. 2014). Similarly, the Fourth Circuit recently held in an *en banc* decision that Title IX unambiguously applies to gender-based dress code policies, and that a challenge to a facially discriminatory dress code policy requiring girls, but not boys, to wear skirts under Title IX could proceed. *Peltier v. Charter Day School, Inc.*, 37 F.4th 104, 130–31 (4th Cir. 2022) (en banc).

The Fifth Circuit also has recognized that Title IX protects students from gender discrimination in the enforcement of public school dress and grooming codes. In *Sewell v. Monroe City School Board*, the Fifth Circuit reversed dismissal of a student's race and sex discrimination claims against a school district in Louisiana. 974 F.3d 577, 585 (5th Cir. 2020). Although many students in a school district dyed their hair various colors, a Black male student was the only person who was punished for it, and a teacher asked the student if he "was gay with 'that mess' in his head." *Id.* at 584. The Fifth Circuit allowed the student's Title IX claim for gender-based harassment to proceed because the teacher's words "could imply animus toward males who do not conform to stereotypical notions of masculinity." *Id.* (citing *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 456–60 (5th Cir. 2013) (en banc)). Here, Defendants are similarly discriminating against Plaintiff L.B. for not conforming to stereotypical notions of femininity and masculinity and discriminating against her based on gender in violation of Title IX.

Title IX is absolute in its prohibition against "discrimination" in any program or activity that receives federal funds, subject to narrow, clearly enumerated exceptions. Although the statute contains certain defined exceptions (covering, for example, religious organizations, social fraternities or sororities, "voluntary youth service organizations," *see* 20 U.S.C. § 1681(a)(2)-(9), or separate living facilities, *see* 20 U.S.C. § 1686, gender-differentiated dress or grooming codes

are not among them. Plaintiffs have a substantially likelihood of prevailing on their claims under Title IX because Defendants are facially discriminating against L.B. based on gender and denying her equal access to educational opportunities and activities.

### 3.   Harrison County School District's Gendered Dress Code Policy Violates the First Amendment

The First Amendment of the U.S. Constitution states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const., amend. I.; *see Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) (noting that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."). But Defendants have done precisely what this bedrock principle prohibits by censoring and restricting L.B.'s peaceful expression of social and political viewpoints central to who she is. L.B. is an openly transgender girl who maintains that she has the right to wear a dress and attend her high school graduation ceremony in a manner consistent with the gender that she lives, and has lived, every day for the past four years. L.B. further believes that transgender girls should be allowed to wear dresses, skirts, and other traditionally feminine clothing items, as she has to school and school-sponsored events throughout her high school career. L.B.'s freedom to express these beliefs falls squarely within the protections afforded by the First Amendment.

It is well established that the "expression of one's identity and affiliation to unique social groups" may constitute "speech" as envisioned by the First Amendment. *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 441 (5th Cir. 2001). The Fifth Circuit has recognized that a person's "choice of clothing is infused with intentional expression on many levels" and that clothing may also "symbolize ethnic heritage, religious beliefs, and political and social views." *Id.* Describing the expression of students, in particular, the Fifth Circuit acknowledged that students "often choose their attire with the intent to signify the social group to which they belong." *Id.* at 441. Because

these messages can have "considerable [e]ffect, whether positive or negative, on a young person's social development," the Fifth Circuit rejected the blanket assumption that "expression of one's identity and affiliation to unique social groups *through choice of clothing* will never amount to protected speech." *Id.* More recently, a Mississippi federal district court held that an openly gay student was likely to succeed on her claims that her First Amendment rights were violated when she was prohibited from wearing a tuxedo to communicate the message that women should not be restricted to traditional "female" attire and attending prom with her girlfriend as an expression of her identity. *McMillen v. Itawamba Cnty. Sch. Dist.*, 702 F. Supp. 2d 699, 704-05 (N.D. Miss. 2010).

When schools try to restrict student expression of specific political views, a heightened level of scrutiny applies, requiring schools to "demonstrate that the expression would 'substantially interfere with the work of the school or impinge upon the rights of other students.'" *Canady*, 240 F.3d at 442. School officials cannot prohibit students from expressing their views based on "a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker*, 393 U.S. at 509. In seeking to avoid a "material disruption," school officials "must base their decisions 'on fact, not 'intuition, that the expected disruption would probably result from the exercise of the constitutional right and that foregoing such exercise would tend to make the expected disruption substantially less probable or less severe.'" *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 221-22 (5th Cir. 2009).

Here, L.B. wants to wear her dress and heeled shoes at her graduation ceremony to express peacefully her identity, as well as her social and political viewpoints that it is appropriate for transgender girls to wear clothing and accessories consistent with their gender identity. Indeed, the communicative content of her act of wearing a dress and heeled shoes would be well understood

by her peers and classmates, as well as her teachers and administrators. This message is precisely the kind of speech that falls squarely within the purview of the First Amendment. Given that L.B. has frequently worn dresses and other traditionally feminine clothing items at school and school-related events over the past four years, there is no evidence that L.B.'s expressive conduct would cause any substantial or material disruption in school activities or discipline. Thus, L.B. has a strong likelihood of succeeding on the merits of her First Amendment claim.

## II.   Plaintiffs Will Suffer Irreparable Harm in the Absence of an Injunction

High school graduation is a capstone event that L.B. has only once chance of attending. Defendants have placed her ability to attend in jeopardy, causing daily and irreparable harm to L.B. and her parents. If this Court does not restrain Defendants' eleventh-hour attempt to bar L.B. from attending her graduation ceremony in a formal dress, these injuries will compound in ways that cannot be repaired. Plaintiff L.B. has faced severe and irreparable injury while being singled out to be questioned in the principal's office about her graduation outfit, instructed by Defendants to conform to their rigid gender-based rules in order to attend her own graduation, misgendered and labeled "a boy" by Defendant King in conversations about her ability to attend her graduation, and threatened with exclusion from an important and once-in-a-lifetime high school event—solely based on gender.

Defendants' actions unjustly infringe upon L.B.'s First Amendment freedoms and cause her irreparable injury. "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (citing *Elrod v. Burns*, 427 U.S. 347, 373, (1976)). *See also Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) ("Loss of First Amendment freedoms, even for minimal periods

of time, constitute irreparable injury.") (citing *Elrod*, 427 U.S. at 373); *Freelance Entertainment, LLC v. Sanders*, 280 F. Supp. 2d 533, 547 (N.D. Miss. 2003) ("There is a strong presumption of irreparable injury in cases involving infringement of First Amendment rights.") (citing *Elrod*, 427 U.S. at 373).

Without an injunction from this Court, these Plaintiff L.B. will be forced to miss her only high school graduation ceremony, simply because she does not conform to Defendants' harmful gender norms. There is a substantial threat that irreparable harm will result if a temporary restraining order is not granted. Accordingly, absent an injunction, L.B. will suffer irreparable harm.

## III.    The Balance of Equities Tips Sharply in Plaintiffs' Favor

The harm to Plaintiffs in the absence of injunctive relief will be substantial and immediate. In contrast, Defendants cannot show any harm from not enforcing this unconstitutional and unlawful policy. Defendants have already allowed L.B. to wear dresses and other traditionally feminine clothing items to school and school-sponsored events and activities over the last four years of her high school career without repercussion and has not barred any other girls from wearing a dress at graduation. *See Arnold*, 479 F. Supp. 3d at 530 (recognizing that there is no harm to a public school district in allowing a male student to wear long hair, when the district had already previously allowed another male student to wear long hair with "no apparent effect on the school or its students"). The balance of harms therefore favors the issuance of equitable relief. *See McIntire v. Bethel School Indep. School Dist*. No. 3, 804 F. Supp. 1415, 1429 (W.D. Okla. 1992) ("[T]he threatened injury to Plaintiffs — impairment and penalization of the exercise of their First Amendment rights — outweighs whatever damage, if any, the proposed injunction may cause

Defendants."). On balance, equity falls squarely and completely on the side of granting Plaintiffs'
request for injunctive relief.

## IV.      Injunctive Relief Is Necessary to Serve the Public Interest

The entry of a temporary restraining order in this case will serve the public interest. "[I]t is
in the public's interest to protect rights guaranteed under the Constitution of the United States."
*Freelance Entertainment*, 280 F. Supp. 2d at 547. *"*[T]he public interest always is served when
public officials act within the bounds of the law and respect the rights of the citizens they serve."
*Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 93 (5th Cir. 1992) (citation omitted). Conversely,
"[p]ublic interest is never served by a state's depriving an individual of a constitutional right." *Kite
v. Marshall*, 454 F. Supp. 1347, 1351 (S.D. Tex. 1978).

Protecting L.B.'s right to express her views is in the public interest because it is generally
accepted that American society at large benefits from peaceful expression and the exchange of
ideas. As the Supreme Court has stated, "[t]he vitality of civil and political institutions in our
society depends on free discussion . . . . [I]t is only through free debate and free exchange of ideas
that government remains responsive to the will of the people and peaceful change is effected. The
right to speak freely and to promote diversity of ideas and programs is therefore one of the chief
distinctions that sets us apart from totalitarian regimes." *Terminiello v. City of Chicago*, 337 U.S.
1, 4 (1949) (citing *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937)). See also *Iowa Right to Life
Comm., Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) ("[T]he public interest favors protecting
core First Amendment freedoms."); *Entertainment Software Ass'n v. Foti*, 451 F. Supp. 2d 823,
837 (M.D. La. 2006) ("It is undoubtedly in the public interest to protect First Amendment
liberties."); *ACLU v. Reno*, 929 F. Supp. 824, 851 (E.D. Pa. 1996) ("No long string of citations is
necessary to find that the public interest weighs in favor of having access to a free flow of

constitutionally protected speech."); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994) ("At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence. Our political system and cultural life rest upon this ideal.")).

Here, it would disserve the public interest to permit Defendants to keep engaging in unconstitutional and unlawful gender discrimination while this lawsuit is resolved.

## V.   The Court Should Not Require Plaintiffs to Provide Security Prior to Issuing a Temporary Restraining Order.

The Fifth Circuit has ruled that a court "may elect to require no security at all" when issuing a temporary restraining order under Federal Rule of Civil Procedure 65(c). *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978). As students who are seeking to enforce their civil rights, Plaintiffs request that this Court exercise its discretion to require no security in issuing this relief. *See, e.g.*, *Arnold* Dkt. 99 at 2 (requiring no bond for injunctive relief against enforcement of a public school district's discriminatory dress and grooming policy).

## CONCLUSION

Plaintiffs satisfy all of the requirements for a temporary restraining order to be issued and respectfully request the urgent assistance of this Court to stop Defendants from barring L.B. from attending her graduation ceremony wearing a formal white dress, consistent with the policy for graduating girls in the School District.

Respectfully submitted, this the 18th Day of May, 2023

/s/ McKenna Raney-Gray_____

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Linda S. Morris*
Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
lindam1@aclu.org

*Motion for admission pro hac vice
forthcoming

Counsel for Plaintiffs

AMERICAN CIVIL LIBERTIES UNION OF
MISSISSIPPI FOUNDATION, INC.
McKenna Raney-Gray, MS Bar  No. 106330
Joshua Tom, MS Bar. No 105392
P.O. Box 2242
Jackson, MS 39225
Phone: (601) 354-3408
jtom@aclu-ms.org
mraney-gray@aclu-ms.org

**CERTIFICATE OF CONFERENCE**

At approximately 11:29 AM on May 17, 2023, Plaintiffs advised the counsel for Defendants of their intention to file an emergency motion for temporary restraining order. Plaintiffs requested counsel's position on the requested motion and invited counsel to conference. Counsel acknowledged receipt of Plaintiffs' request the same day via phone call. Given the urgency of the request, Plaintiffs hereby file this motion.

**CERTIFICATE OF SERVICE**

I, McKenna Raney-Gray, hereby certify that on May 18, 2023, that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties on file with the Court.

*/s/ McKenna Raney-Gray*
McKenna Raney-Gray